**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WILLIAM P. BROWN, II,

      Petitioner,

v.                                     Case No. 8:15-cv-2732-T-33EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

     Petitioner William P. Brown, II, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1).  He challenges his convictions entered by the Circuit Court for the Twelfth Judicial Circuit, Sarasota County, Florida.   Respondent filed a response (Doc. 11), which raises no challenge to the petition's timeliness.  Brown filed a reply (Doc. 14).  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

     A jury convicted Brown of attempted second degree murder (count one), robbery with a firearm (count two), and attempted robbery with a firearm (count three).  (Doc. 13, Ex. 1, Vol. II, pp. 242-44.)  The trial court sentenced Brown to life in prison on count two, 30 years in prison on count one, and 15 years in prison on count three.  (Doc. 13, Ex. 1, Vol. III, pp. 427-33.)  The state appellate court reversed his conviction on count one, and remanded for a new trial on that count.  *Brown v. State*, 74 So.3d 539, 540 (Fla. 2d DCA

2011).  It affirmed Brown's convictions and sentences in all other respects.  *Id.*  According

to Brown and Respondent, the State announced a *nolle prosequi* of count one.  (*See* Doc.

1, p. 6; Doc. 11, p. 3.)

Brown filed a state habeas petition alleging ineffective assistance of appellate

counsel.  (Doc. 13, Ex. 10.)  The state appellate court denied the petition without comment.

(Doc. 13, Ex. 11.)   Brown filed a motion for postconviction relief under Florida Rule of

Criminal Procedure 3.850.  (Doc. 13, Ex. 12.)  After conducting an evidentiary hearing, the

state court denied relief.  (Doc. 13, Exs. 15, 17.)  The state appellate court granted Brown

a belated appeal and *per curiam* affirmed the denial of postconviction relief.  (Doc. 13, Exs.

21, 24.)   Brown also filed a successive postconviction motion, which the state court

dismissed.  (Doc. 13, Exs. 18, 19.) Brown did not appeal the dismissal.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

proceeding.  *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert.*

*denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody

"in violation of the Constitution or laws or treaties of the United States."   28 U.S.C.

§ 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court

review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529

U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster,* 563 U.S. 170, 180-81 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In *per curiam* decisions without written opinions, the state district court of appeal denied Brown's state habeas petition and affirmed the denial of postconviction relief.  It also rejected, without discussion, the claim of trial court error that Brown raises in Ground Four. These decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 180-81.   Brown bears the burden of overcoming by clear and convincing evidence a state court factual determination.   "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

### EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must

demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This

> requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).   Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Stricklana*, 466 U.S. at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."   *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Ia.*

Brown must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after

less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of

ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Ground One

Brown argues that counsel was ineffective for failing to investigate his competency. The state court conducted an evidentiary hearing on this claim when Brown raised it in his postconviction motion.  Trial counsel testified that when he represented Brown in this case, he had been a criminal defense attorney for approximately 27 years and was very familiar with the criteria for competency to proceed.  (Doc. 13, Ex. 15, pp. 86-87.)  He testified that Brown was a sophisticated client who participated in reviewing discovery and evidence, asked questions, made suggestions during hearings and trial, testified relevantly in his defense, and "knew exactly what was going on."  (Id., pp. 87-91.)  Counsel's investigator testified that Brown requested that she locate alibi witnesses, and sometimes offered explanations or witnesses to rebut evidence.  (Id., p. 101.)

Counsel testified that he did not see any evidence Brown was mentally ill or incompetent.  (Id., pp. 91, 93.)  Counsel did not ask Brown if he was suffering from a mental illness, but asked whether he was on medication.  (Id., p. 93.) Counsel testified that Brown said he was not. (Id.)

The convictions Brown challenges were imposed in a 2009 case.  Information at the evidentiary hearing indicates that Brown was previously charged in a 2007 case, in which he was initially found incompetent before being restored to competency.[1]  It further appears that a violation of probation hearing was conducted at some point and that the issue of

---

[1] Brown's federal habeas petition does not challenge the convictions entered in his 2007 case.

Brown's past mental illness requiring treatment may have arisen during that proceeding. (Id., p. 91.)  Counsel testified that, by the time of the postconviction evidentiary hearing, he did not independently recall whether he previously knew that Brown had once been adjudicated incompetent and sent to the state hospital.  (Id., p. 94.)

Brown testified at the postconviction evidentiary hearing that in 2007, he went to the state hospital and the psychiatric hospital.  (Id., p. 109.)  He stated that he took medication upon his release, but later stopped.  (Id.)  Brown testified that counsel inquired about his mental health, but never asked whether he was on medication.  (Id., pp. 109-110.)

At the conclusion of the hearing, the state court found:

> Based on everything that's been presented, I'm going to make the following findings:
> First of all, I will indicate that I do have a recollection of the trial, and I have a recollection of Mr. Brown's behavior, performance, testimony, et cetera, during the trial and pretrial hearings.
> I found the testimony of [counsel] and [the investigator] to be extremely persuasive.
> . . .
> With respect to the second portion [of the postconviction motion], namely, the ineffective assistance, or [counsel's] failure to have the defendant evaluated for competency, I will, likewise, deny the motion for post-conviction relief.
> Once again, I found [counsel's] testimony very persuasive, that throughout his interactions with Mr. Brown there was never any indication to [counsel] of any competency issues, that Mr. Brown was always able to communicate rationally and appropriately, was very involved in the defense of his case by working with [counsel] and [the investigator] in providing information for possible assistance as a defense or defenses in the trial, alibi witnesses, et cetera.
> I will indicate also that during the testimony of the defendant during trial - - and I'm sure this is supported by the transcript - - I never had any indication from Mr. Brown that there was ever any mental deficiency or problem that would have suggested to me any competency issues.
> I have taken judicial notice of the 2007 cases in which Mr. Brown was committed for a short period of time.  I did make a finding back in July of 2007 that the defendant was not competent in those cases.  He was at the hospital for a relatively short period of time.  By December, he was found to

be fully restored to competency, and the recommendations for the defendant by the hospital was that the defendant received vocational training, GED adult education classes, and substance abuse treatment.  There was never any profound mental illness or any kind of medication that was called for, that I recall.

But I want to emphasize that [counsel], in his testimony, was very clear that he never had any indication of competency issues, that he has a great deal of experience with criminal defendants, very familiar with competency issues, sanity issues.  He had no doubt that the defendant appreciated the allegations.  He, in fact, called the defendant sophisticated: He had a lot questions, a lot of requests, he wanted to review the evidence, was very knowledgeable, very articulate, there was no wandering of thought, and he was on-point throughout his testimony.

So I will find that [counsel] was not ineffective for not pursuing or raising the competency issue, because, quite frankly, there was nothing there to pursue.

So on both issues, I will deny the motion for post-conviction relief.

(Id., pp. 121-24.)[2]

The conviction of a defendant who is mentally incompetent violates due process.

*Pate v. Robinson*, 383 U.S. 375 (1966).  The federal standard for competence to proceed is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960).  *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel,

---

[2] After the hearing, the state court entered an order stating:

On April 17, 2013, this court held the evidentiary hearing. . . . Based on the testimony and arguments presented, and for the reasons announced in open court following the hearing . . . , upon consideration, it is hereby

**ORDERED AND ADJUDGED** that the Defendant's Motion for Postconviction Relief is denied in its entirety.

(Doc. 13, Ex. 17.)

and to assist in preparing his defense may not be subjected to a trial.").

Testimony of counsel and the investigator supports the state court's decision. Brown did not provide any testimony to the contrary concerning his mental state or participation in the case. Brown did not present any evidence or testimony demonstrating his incompetency in 2009 or later. He does not establish that any grounds existed for counsel to investigate his competency with respect to the convictions he challenges. Additionally, the state court took notice of Brown's restoration to competency in his 2007 case. That Brown was at one point declared incompetent in this other case does not establish that counsel was deficient for failing to investigate his competency with respect to the 2009 case. *See, e.g., Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quoting *Card v. Singletary*, 981 F.2d 481, 487-88 (11th Cir. 1992)). Accordingly, he fails to show that counsel performed deficiently in not investigating his competency.

Nor does Brown demonstrate prejudice as a result of counsel's actions. "In order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)). Brown does not make this showing. He has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his ineffective assistance of counsel claim.

Within Ground One, Brown alleges that the postconviction court's failure to address

his competency amounted to a due process violation.  He claims the court substituted its own assessment of his mental health for a proper evaluation.  Brown has not presented a federal claim. (Doc. 1, pp. 8-9.)  Federal habeas relief is only available if a prisoner is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Accordingly, claims that do not involve federal issues are not cognizable in a § 2254 proceeding.  *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (issues of state law do not provide a basis for federal habeas relief).

Even interpreting the claim to involve a federal issue, and assuming that the claim is cognizable,[3] it is unexhausted.  To the extent Brown presented this issue on postconviction appeal, he only addressed state law.  (Doc. 13, Ex. 23, pp. 6-11.)  Brown was required to raised the federal nature of the claim in state court to exhaust it.  *See Picard*, 404 U.S. at 275-76.  State procedural rules do not provide for successive postconviction appeals.  *See* Fla. R. App. P. 9.141.  Thus, Brown's failure to exhaust the federal claim results in a procedural default.  He does not establish the applicability of an exception to overcome the default.

Notwithstanding the default, Brown fails to show entitlement to relief.  Brown has not shown that the postconviction court incorrectly stated that he was found to be restored to competency.[4]  Nor does he demonstrate any error due to the judge stating his recollections of trial.  Furthermore, Brown does not establish error in the postconviction court's failure

---

[3] *See Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1220 n.54 (11th Cir. 2009) (expressing doubt as to whether a petitioner has a federal due process right to be competent in state postconviction proceedings).

[4] To the extent Brown argues that the state court did not comply with Florida's procedural rules regarding competency, his assertion is not cognizable in his federal habeas petition.  *See Branan*, 861 F.2d at 1508.

to have him examined for competency.  "[T]he standard for determining whether a trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial, where no inquiry is requested, is whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1256 (11th Cir. 2002) (citing *Drope*, 420 U.S. at 180 and *Pate*, 383 U.S. at 385).

The record indicates Brown was previously found restored to competency in another case.  Brown's postconviction motion contained no allegation that he was incompetent for purposes of the postconviction proceedings.  (Doc. 13, Ex. 12.)  Nor did the postconviction motion request a competency hearing.  (Id.)  Additionally, the record reflects that Brown responded appropriately to questioning during his evidentiary hearing testimony. (Doc. 13, Ex. 15, pp. 105-13.)   Therefore, Brown fails to establish that the facts known to the postconviction court at the time of the evidentiary hearing created a bona fide doubt as to his competency.  Brown is not entitled to relief on Ground One.

**Ground Two**

Brown asserts that trial counsel was ineffective for failing to move for a mistrial when a State witness, Detective Anthony DeFrancisco, testified about Brown's prior bad acts. Specifically, he alleges that DeFrancisco testified Brown had prior involvement in robberies against Hispanic victims. Brown claims that this testimony "allow[ed] the jury to base its findings on unfounded allegations and trial counsel should have moved for a mistrial once the witness disclosed this prejudicial information to the jury."  (Doc. 1, p. 14.)  The state court dismissed Brown's successive postconviction motion, in which he raised this claim:

The Defendant alleges one claim of ineffective assistance of counsel:

trial counsel failed to move for a mistrial after eliciting from a police detective that the Defendant was "known to commit robberies" and other statements about the Defendant's criminal history and prior incarceration.

The Court finds that the motion is procedurally barred.  All potential Rule 3.850 claims must be raised in a single motion.  Defendants are not permitted to submit additional grounds for relief on a piecemeal basis, particularly with respect to claims of ineffective assistance of counsel.  *See Scott v. State*, 656 So.2d 204 (Fla. 5th DCA 1995); *Christopher v. State*, 489 So.2d 22, 24 (Fla. 1986).  A motion will not be barred as successive, however, if the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence.  *See* Rule 3.850(b)(1) and (f), Fla. R. Crim. P.

The Defendant's earlier motion for postconviction relief was disposed of on the merits after an evidentiary hearing.  His present motion alleges a new claim and states that he was unaware of the grounds for the claim until appellate counsel forwarded the record on appeal to him in June 2013.  The claim, however, is based on counsel's failure to move for a mistrial during a trial which the Defendant attended.  Furthermore, the record indicates that the full 12 volumes of trial transcripts in this case were field with the Clerk of Court on August 12, 2010.  These transcripts could have been obtained from the Clerk.  On this record, the Court finds that the facts on which the new claim is predicated could have been ascertained by the exercise of due diligence.  The Court finds that the failure of the Defendant to assert this ground in his prior motion constitutes an abuse of the procedure governed by the Florida Rules of Criminal Procedure.  It is, thereupon,

**ORDERED AND ADJUDGED** that the motion for postconviction relief is **DISMISSED** with prejudice.

(Doc. 13, Ex. 19.)

This claim is procedurally defaulted.  A federal habeas petitioner's failure to present a claim in accordance with state procedural rules generally precludes federal habeas review of the claim. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").  "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir.2001).  A state court's procedural

ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." *Id.* (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir.1990)).

The state court applied a state procedural rule prohibiting a claim of ineffective assistance of counsel in a successive postconviction motion when the claim could have been raised in the initial postconviction motion. Florida courts consistently apply this procedural rule. *See Jones v. State*, 591 So. 2d 911, 913 (Fla. 1991) ("A defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions."); *Tafero v. State*, 524 So.2d 987, 988 (Fla. 1987) ("When counsel's ineffectiveness is raised in an initial motion for postconviction relief, a successive motion raising additional grounds for the same claim can be summarily denied."); *Ragan v. State*, 643 So.2d 1175, 1176 (Fla. 3d DCA 1994) ("Where an initial motion for postconviction relief raises the claim of ineffective assistance of counsel, the trial court may deny a successive motion which raises additional grounds for ineffective assistance of counsel if abuse of process is evident."). Accordingly, this ground is procedurally defaulted because it was rejected on an independent and adequate state procedural ground.

Alternatively, the claim is procedurally defaulted because Brown failed to exhaust it in state court when he did not appeal the postconviction court's order of dismissal. "In Florida, exhaustion usually requires not only the filing of Rule 3.850 motion, but an appeal

from its denial." *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979).  Brown cannot

return to state court to file an untimely collateral appeal.  *See* Fla. R. App. P. 9.110(b),

9.141(b)(1).

Brown does not establish application of either the cause and prejudice or

fundamental miscarriage of justice exception to overcome the procedural default of this

claim.  Notwithstanding the default, Brown fails to show entitlement to relief.  During cross-

examination, DeFrancisco testified as follows concerning Brown's criminal history:

Q      Sir, is - - in your probable cause affidavit, you had to write that again, being true and correct and under oath, true?

A      I'm sorry.  I couldn't understand what you said.

Q      I said your probable cause affidavit, you had to write that that was true and correct, and you had to say it under oath just like you were in court.

A      Yes.

Q      Okay.  Didn't you write Brown is a convicted felon recently released from prison in September of 2008?

[STATE]:            Objection - -

THE WITNESS:       Yes.

[STATE]:            - - hearsay and improper impeachment.

BY [COUNSEL]:

Q      Didn't you write - -

THE COURT:         Overruled on - - overrule the objection.

[COUNSEL]:         Okay.

BY [COUNSEL]:

Q      Didn't you write, "Brown is known to commit these types of crime[s],

armed robberies with a firearm?

[STATE]:            Objection, hearsay.

BY [COUNSEL]:

Q      Isn't that what you wrote?

THE COURT:        Overruled.

BY [COUNSEL]:

Q      Isn't that what you wrote?

A      Yes.

Q      Isn't it true Mr. Brown never went to prison for any armed robberies with a firearm, and he had never been to prison for armed robberies?

A      I can tell you that - -

Q      Sir, isn't it true that Mr. Brown never went to prison for armed robberies?

A      You want to let me answer the question?  What I said was he went to prison.  He was recently released from prison in 2008.  That's true. He's known to commit these types of crimes.  That's true, because I've investigated them.  I know exactly what this young man has done. You want to bring this up and open that door, we'll go with it.  He has done these types of crimes, and I've had to investigate them in the past.

Q      You write on - -

A      He might not have been convicted and gone to prison for that, but that's the way it is.

Q      Armed robbery with a firearm, he's never been - - other than where you arrested him in this case, he's never been arrested for armed robbery with a firearm, has he?

A      Oh, no, he has as far as I can remember.

Q      Name me one case where he's ever been arrested for armed robbery with a firearm.

A      Of[f] the top of my head, there was a case in the - - if I recall correctly - - in the 1500 block of 24th Street.  There was a robbery of some Hispanic people at a house.  Investigate that case.  And I believe, if I'm not mistaken, that was one - - a case where he was charged with a robbery like that.

Q      Was he - - so you're saying he was - -

A      As far as I can remember.  I didn't say convicted.  I said he was charged.  I can't recall whether - - what happened to the case or not.  It's been too long.

Q      So did you - - so did you just put this in here at random?  Or were - - you put this in to - - telling this to the Judge?  "Brown is known to commit these types of crimes, armed robberies with a firearm."  You had a basis to put that in there?

A      From my past experience with him.

Q      So you're saying that you think he committed armed robbery, therefore, he does?

A      I just answered the question.

Q      Okay.  So when you came into this, you were predisposed to believe that Mr. Brown did this crime?

A      No, I wasn't predisposed.  I didn't know who my suspect was until that night after the juveniles identified him.  I've told you that about ten times.

(Doc. 13, Ex. 2, Vol. VII, pp. 1281-84.)

The record reflects that counsel elicited DeFrancisco's testimony during cross-examination in support of his argument that DeFrancisco was biased against Brown.[5]  Counsel made this position clear when the State objected to his questions.  The trial transcript reflects the following:

---

[5] Counsel raised this assertion in his closing argument.  (Doc. 13, Ex. 2, Vol. IX, pp. 1649-50, 1652, 1654, 1661-62.)

Q      Now isn't it true on page 3 of your probable cause affidavit - - you have page 3 of 3?

A      Go ahead.

Q      Don't you write, "Brown is a convicted felon recently" - -

[THE STATE:]      Objection.  Can we approach?

THE COURT:      Yes.

(THE FOLLOWING PROCEEDINGS ENSUED AT THE BENCH.)

[THE STATE]:      Judge, I think you need to voir dire the Defendant before he brings out the fact that he's a convicted felon (indiscernible) discuss (indiscernible) that he (indiscernible).

THE COURT:      Well, I - -

[COUNSEL]:      It's pretty much well-known.

THE COURT:      I do - - huh?

[COUNSEL]:      I said it's pretty much well-known.

[THE STATE]:      Not known to the jury.

THE COURT:      The jury doesn't know it.

[THE STATE]:      Right.

THE COURT:      If you're fully expecting him to testify in the case - -

[COUNSEL]:      Yeah, and I'm going to bring that out first thing when he testifies.

THE COURT:      Okay.  So you're impeaching him with that now?

[COUNSEL]:      No, I'm going to show his bias and his prejudice.

THE COURT:      Oh, okay.  All right.

(Doc. 13, Ex. 2, Vol. VII, pp. 1280-81.)  In furtherance of this theory, counsel questioned

whether DeFrancisco pursued other potential suspects, including an individual shown to have contributed to DNA found on the firearm the State entered into evidence.  (Id., pp. 1259-62, 1271-72, 1286-88, 1312-13, 1318-20, 1322-23.)

In Florida, "a mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial."  *Duest v. State*, 462 So.2d 446, 448 (Fla. 1985).  *See also United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007) ("A mistrial should be granted if the defendant's substantial rights are prejudicially affected.").  Brown has not made this showing.  Even assuming he had, "'[u]nder the invited error rule, a party cannot successfully complain about an error for which he or she is responsible or of rulings that he or she invited the court to make.'"  *Anderson v. State*, 93 So.3d 1201, 1203 (Fla. 1st DCA 2012) (quoting *Muina v. Canning*, 717 So.2d 550, 553-54 (Fla. 1st DCA 1998)).  Brown has not established that counsel performed deficiently in not moving for a mistrial, or that there is a reasonable probability the outcome of the proceeding would have been different had counsel done so.  Ground Two warrants no relief.[6]

**Ground Three**

Brown asserts that appellate counsel was ineffective for not arguing that the cumulative effect of inadmissible evidence of prior bad acts or wrongs deprived Brown of due process.  This claim involves the trial testimony of Detective DeFrancisco addressed in Ground Two, as well as portions of Brown's testimony.  With respect to his testimony,

---

[6] Brown's allegation that the state postconviction court erred in not conducting an evidentiary hearing on his claim fails to raise a cognizable basis for habeas relief.  *See Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1366 (11th Cir. 2009) ("[W]e conclude [Carroll's] due process claim regarding the failure of the state court to conduct an evidentiary hearing does not state a cognizable claim for habeas relief."); *Anderson v. Sec'y, Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) ("We have held that the state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief.").

Brown claims that:

> [I]t was elicited from the Petitioner th[at] he had learned for the first time that he has a sister on his father's side during his <u>previous incarceration</u> from 2006 to 2008.  The Petitioner conveyed [to] the jury that he had served (24) months for "Battery on a Law Enforcement Officer".  Also that he had been on probation for grand theft motor vehicle and burglary, and that he had stolen a bike.  It was also offered to the jury that Petitioner was a convicted felon and did so while the State Prosecutor was presenting its evidence during the examination of it's witness, which required the State to object to counsel's rudeness.

(Doc. 1, p. 19) (emphasis in original).

In addressing his family history, Brown testified on direct examination:[7]

Q      Do you have any sisters?

A      Yes, I have two sisters and possible a third sister.

Q      Okay.  What do you mean possible a third sister?

A      Well, my dad is basically back in the day he was, I consider a dog. Was just having sex with a lot of females, so basically I found out too many times that I have different brothers, sisters and possibles and stuff like that.

Q      When did you first f[ind] out that you just - - or when did you find out that you had a sister?

A      When I was in jail from 2006 to 2008, I noticed - - somebody - - I was advised that I had two sisters that - - one was my actual blood sister and there was - - and second was a possible because she looked like me and my - - one of my brothers is her brother too.

. . .

Q      Okay.  Now, on one of those jail phone calls, were you calling your sister?

A      Yes, sir.

---

[7] Brown does not identify the specific portions of his testimony to which he refers.  However, he cited to portions of the trial transcript in his state habeas petition.  (Doc. 13, Ex. 10, pp. 2-3.)  The Court relies on these citations to the record.

Q      Okay.  What sister was that?

A      Romesha Barr (phonetic).

Q      Okay.  When did you first find out about her?

A      When I was in jail from 2006 to 2008.

(Doc. 13, Ex. 2, Vol. VIII, pp. 1487-88.)  Brown also testified about his criminal history on direct examination:

Q      Okay.  You said you were on probation, what were you on probation for?

A      It was a grand theft, then the grand theft motor vehicle and a burglary.

(Id., p. 1491.)

Q      You said you had just got out of you - - you just got released from jail?

A      Prison, yeah.  Twenty-four months.

Q      Okay.  What did you serve 24 months for?

A      Battery on LEO.

Q      What?

A      Battery on a LEO.

Q      Battery on a LEO.  Tell me what that is?

A      Well, battery on a law enforcement officer.  Basically I got that charge in - - inside the county jail.

(Id., p. 1550.)  On cross-examination, Brown testified as follows:

Q      You've never been convicted of grand theft auto?

A      No, that was a dirt bike.

Q      That was a dirt bike?

A      That was a dirt bike.

| Q | You'll steal a dirt bike then? |
|---|---|
| A | I didn't want to get into details about that, but I didn't steal a dirt bike. I was basically in the mix of it.  That's all it was. |
| Q | Do you have a conviction for that? |
| A | I took the conviction because I had to try to hurry up and get home because my momma was pregnant.  That's why I took the conviction. |

(Id., p. 1574.)  Finally, with respect to his claim that "[i]t was also offered to the jury that Petitioner was a convicted felon" during the State's case, Brown refers to DeFrancisco's statement on the probable cause affidavit that Brown was a convicted felon recently released from prison.

The state appellate court rejected this claim without discussion when Brown raised it in his state habeas petition.  Claims alleging ineffective assistance of appellate counsel are analyzed under the *Strickland* standard.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim, Brown must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Brown would have prevailed on appeal.  *Robbins*, 528 U.S. at 285-86.

Brown does not show that appellate counsel was ineffective for failing to argue that the cumulative effect of inadmissible evidence deprived him of due process.  First, there is no indication from the record that this issue was preserved for appeal.  Counsel cannot be deemed ineffective for failing to raise on appeal issues that were not properly preserved.  *See Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *Atkins v. Singletary*,

965 F.2d 952, 957 (11th Cir. 1992) ("[A]ppellate counsel rendered effective assistance because he either properly argued Atkins' claims on appeal or he was prohibited from raising on appeal issues that had not been preserved for appeal at the trial level."); *Francois v. Wainwright*, 741 F.2d 1275, 1286 (11th Cir. 1984) (in light of the lack of objection to a trial court's denial of a requested jury instruction, "appellate counsel could reasonably have concluded that on appeal the Florida Supreme Court would not review the jury instruction issue on the merits.").

Brown does not demonstrate that the effect of the allegedly improper testimony presented a question of fundamental error that could be raised for the first time on direct appeal.  "Generally, to raise an error on appeal, a contemporaneous objection must be made at the trial level when the alleged error occurred. . . . Only when error is fundamental can the error be raised on appeal in the absence of contemporaneous objection.  An error is fundamental when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process."  *J.B. v. State*, 705 So.2d 1376, 1378 (Fla. 1998) (citations omitted).  *See also Patton v. State*, 878 So.2d 368, 380 (Fla. 2004) ("Fundamental error is defined as error that reaches 'down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'") (quoting *Kilgore v. State*, 688 So.2d 895, 898 (Fla. 1996)).

Although he noted in his state habeas petition that he was raising a federal issue to preserve his claim for federal review, Brown challenged the propriety of this testimony under state law. (Doc. 13, Ex. 10.)  The state appellate court has determined that state law question by rejecting Brown's claim of ineffective assistance of appellate counsel.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida

Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [counsel] objected to the introduction of Callahan's statements . . . the objection would have been overruled. Therefore, [counsel] was not ineffective for failing to make that objection.") (citation omitted); *see also Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). [8]

Brown does not establish that the state appellate court's rejection of his claim was an unreasonable application of *Strickland*. He is not entitled to relief on Ground Three.

**Ground Four**

---

[8]Moreover, as addressed in Ground Two, counsel elicited testimony from DeFrancisco in arguing that he was biased against Brown during the investigation. It appears that portions of Brown's testimony referenced in Ground Three were volunteered by Brown on direct and cross-examination, or were elicited by defense counsel to counter DeFrancisco's testimony about Brown's alleged participation in armed robberies and to support the defense theory of DeFrancisco's bias. There is no indication from the record that Brown was previously convicted of armed robbery. Brown further testified that had not committed or been convicted of armed robbery. (Doc. 13, Ex. 2, Vol. VIII, pp. 1491-92, 1529.) Additionally, that Brown had been incarcerated was already known to the jury because the State entered into evidence recordings of calls he made while in jail. (Doc. 13, Ex. 2, Vol. VII, pp. 1210-27.) Brown does not establish either prong of *Strickland*.

Brown argues that the trial court erred in admitting into evidence a firearm that was not linked to the offenses with which he was charged. Preliminarily, Brown does not specifically raise a federal claim in his petition. A claim involving only state law is not cognizable in a federal habeas petition. *Branan*, 861 F.2d at 1508.

Even if Ground Four is interpreted as presenting a federal claim, it is unexhausted because Brown did not raise a federal claim on appeal. His challenge to the firearm's admission was presented only in state law terms. (Doc. 13, Ex. 3, pp. 37-42.) State procedural rules do not provide for successive direct appeals. *See* Fla. R. App. P. 9.140. Accordingly, because Brown cannot return to state court to raise the federal claim, it is procedurally defaulted. Brown does not establish the applicability of an exception to overcome the default.

Notwithstanding the default, Brown fails to show entitlement to relief. "[G]enerally federal courts 'are not empowered to correct erroneous evidence rulings of state trial courts.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998) (quoting *Boykins v. Wainwright*, 737 F.2d 1539, 1543 (11th Cir. 1984)). *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("Nor do our habeas powers allow us to reverse [petitioner's] conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.")

However, habeas relief may be warranted if an error rises to the level of a denial of fundamental fairness, implicating the petitioner's federal due process rights. *Snowden*, 135 F.3d at 737. A state court evidentiary ruling typically cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518

U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)).

Brown has not made this showing. First, he did not object to the State's introduction of the firearm into evidence. Rather, the defense agreed to its admission. (Doc. 13, Ex. 2, Vol. V, pp. 917-18.) Additionally, the State presented evidence of a link between the firearm and the offenses. The offenses occurred on the night of January 5, 2009 in Sarasota. Luis Deanda was walking home from a mobile home park when a man he identified as Brown approached him, placed a gun to his forehead, and asked for a cell phone. Deanda described the gun as a small, black revolver. (Doc. 13, Ex. 2, Vol. II, pp. 321, 368.) Deanda responded affirmatively when asked whether the gun that was later introduced into evidence was similar to or the same as the gun used during the offense. (Id., p. 328.) That same night, Javier Mata was robbed and shot outside of his residence in the mobile home park.[9]

On January 8, 2009, as Brown, L.P., and J.C.[10] conversed on a street corner in Sarasota, Brown handed J.C. a gun. It was a small, black revolver. (Doc. 13, Ex. 2, Vol. IV, pp. 660-62, 670-71.) When police arrived at the street corner, the group fled. Pursuing officers noticed a gun on the edge of a nearby residence's roof. This gun, a revolver, was introduced into evidence at trial. (Doc. 13, Ex. 2, Vol. V, pp. 909, 916-18.)

Detective Tom Laughlin testified that based on the three individuals' paths of travel, neither L.P. nor J.C. could have thrown the gun on the roof. (Doc. 13, Ex. 2, Vol. V, p. 861.) J.C. did not think that the gun introduced at trial, which he described as having a brown handle, was the same gun he handled on January 8 because he recalled that gun

---

[9] Mata viewed a photograph of the gun but could not identify it. (Doc. 13, Ex. 2, Vol. III, pp. 524-25.)

[10] L.P. and J.C. were minors.

as being entirely black.  But upon further questioning he admitted that he was "not that sure" about this testimony, agreeing that the guns were similar.  (Doc. 13, Ex. 2, Vol. IV, pp. 683-85.)  Furthermore, ballistics testing revealed that the gun police found could not be excluded as the gun used in the offenses.  A bullet recovered from Mata's shooting had similar characteristics as bullets test fired from the gun.  (Doc. 13, Ex. 2, Vol. VI, p. 1050.)

Under these circumstances, Brown does not establish that the admission of the firearm resulted in a federal constitutional violation.  He is not entitled to relief on Ground Four.

It is therefore

**ORDERED** that Brown's petition for writ of habeas corpus (Doc. 1) is hereby **DENIED**.  The Clerk is directed to enter judgment against Brown and to close this case.[11]

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that Brown is not entitled to a certificate of appealability (COA).  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Brown "must demonstrate that reasonable jurists would find the district court's

---

[11] Brown seeks an evidentiary hearing.   An evidentiary hearing is not warranted. *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore  a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record."); *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1232 (11th Cir. 2014) ("Henry is not entitled to an evidentiary hearing on the merits of his claim of juror misconduct because he procedurally defaulted that claim.").

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Brown has not made the requisite showing in these circumstances.  Finally, because Brown is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on April 15, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

William P. Brown, II
Counsel of Record